IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALLIED INSURANCE COMPANY and AMCO INSURANCE COMPANY, as subrogees of HARTWIG TRANSIT, INC., an Illinois Corporation, | ) ) ) ) | |
| | ) | No. 20 C 4015 |
| Plaintiffs, | ) ) | |
| | ) | Judge Virginia M. Kendall |
| vs. | ) ) | |
| THE UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

MEMORANDUM OPINION & ORDER

United States Postal Service ("USPS") employee Andrea Martin ("Martin") won a $3.8 million judgment in a state-court action against Hartwig Trucking Company ("Hartwig") for injuries she sustained in a workplace accident. Plaintiff Allied Insurance Company ("Allied") and Plaintiff AMCO Insurance Company ("AMCO") (together "Plaintiffs") paid out $3 million of this claim. Plaintiffs then sued the United States of America ("United States") for contribution under the Federal Tort Claims Act. Plaintiffs move for Partial Summary Judgment to bar the United States from asserting the "open and obvious" doctrine in its defense of the underlying negligence claim. [41] Defendant moves for Partial Summary Judgment on several allegations of duty made in Plaintiffs' Second Amended Complaint. [44] For the following reasons, the Court denies Plaintiffs' motion [41] and grants in part and denies in part Defendant's motion [44].

<u>BACKGROUND</u>

**A.  Factual Background**

*i.  Hartwig and Its Work for the USPS*

At all times relevant to this action, Plaintiffs Allied Insurance Company and AMCO Insurance Company (together "Plaintiffs") provided general liability and excess coverage insurance to Hartwig Transit Inc. ("Hartwig"), which in turn provided ground transport for U.S. mail under contracts with the United States Postal Service ("USPS"). (Dkt. 46 ¶ 1; Dkt. 47 ¶ 1; Dkt. 50 ¶¶ 1–2). To perform those contracts, Hartwig owned trailers it was responsible for maintaining and repairing. (Dkt. 46 ¶ 2–3; Dkt. 47 ¶ 2–3). Per the contracts, Hartwig equipped its trailers with shoring bars and rachet-type restraining straps, called "shoring straps." (Dkt. 46 ¶ 4; Dkt. 47 ¶ 4). Shoring straps are nylon straps used to secure mail containers while in transit. (Dkt. 46 ¶ 5; Dkt. 47 ¶ 5).

In Forest Park, Illinois, the USPS operates the Chicago Network Distribution Center ("NDC"), which includes an area called the Surface Transfer Center with more than 50 docks where postal employees load mail onto trailers. (Dkt. 46 ¶ 6; Dkt. 47 ¶ 6). The USPS contracted with Hartwig to transport mail on various routes requiring Hartwig trailers to come to the NDC to load and unload mail. (Dkt. 46 ¶ 7; Dkt. 47 ¶ 7). To pick up mail, Hartwig's driver backed a trailer into an assigned dock door, set the breaks, shut off the engine, and affixed the chock blocks (blocks placed near the tires intended to prevent the vehicle from rolling or moving accidentally). (Dkt. 46 ¶ 9; Dkt. 47 ¶ 9). Then, a postal employee removed any seal on the trailer; the driver unlocked the trailer door; either the driver or postal employee opened the door; and the postal employee placed a dock plate, a mechanism that closes the gap between the dock's end and a trailer. (Dkt. 46 ¶ 10; Dkt. 47 ¶ 10). The postal employee then performed a cursory visual

inspection of the trailer to make sure postal employees could go inside and assess where to load more mail. (Dkt. 46 ¶ 11; Dkt. 47 ¶ 11).

The Hartwig driver and postal personnel then loaded mail onto the trailer through a combined effort. (Dkt. 46 ¶ 11; Dkt. 47 ¶ 11). Postal employee Gerthina Anderson, who had worked at the NDC's Surface Transfer Center since at least 1987, testified that Hartwig drivers customarily assisted postal workers in any way when drivers came in with a trailer. (Dkt. 46 ¶ 12; Dkt. 47 ¶ 12). This combined loading effort could entail either the driver or postal employees removing straps securing mail containers if the load needed to be rearranged. (Dkt. 46 ¶ 13; Dkt. 47 ¶ 13). By contrast, Brenda Scales, a Supervisor of Distribution Operations at the Network Distribution Center, testified that drivers should not and generally did not assist with loading/unloading trailers. (Dkt. 53 ¶ 28). She did not think postal employees would ever ask a contract driver to help rearrange mail. (Dkt. 53 ¶ 28).

Hartwig terminal manager Joseph Holler testified that if he unhooked straps, he would either let them dangle on the side of the wall with one end hooked in the E-track, hook both ends of the strap in the E-track, or move them forward in the trailer. (Dkt. 46 ¶ 14; Dkt. 47 ¶ 14). Anderson also testified that drivers regularly take off straps and hang them from the trailer's sides. (Dkt. 46 ¶ 15; Dkt. 47 ¶ 15). Scales, however, testified that postal employees remove shoring straps so USPS forklift drivers can load the mail onto the trailers. (Dkt. 53 ¶ 28).

Drivers and postal employees then secure loads using restraints like shoring straps. (Dkt. 46 ¶ 16; Dkt. 47 ¶ 16). Holler testified that he trained his subordinate drivers "the proper way to secure the load so that the load didn't come loose," because "as a contractor, [the driver was] responsible for the last two loading straps. . . . I can explicitly say what the driver's duty is with the rachet strap. The last two straps are the driver's responsibility. Put them up, take them down.

That's it. That's our responsibility." (Dkt. 46 ¶ 17; Dkt. 47 ¶ 17). As required by contract and according to Hartwig practice, the driver then inspected the load to make sure it was properly secured. (Dkt. 46 ¶ 18; Dkt. 47 ¶ 18). Drivers also ensured the trailer was evenly loaded. (Dkt. 46 ¶ 15; Dkt. 47 ¶ 15; Dkt. 53 ¶ 28). The driver then closed and locked the trailer door, and a postal employee affixed a seal and removed the dock plate. (Dkt. 46 ¶ 19; Dkt. 47 ¶ 19). After checking the trailer door was locked, sealed, and secure, the driver removed the chock blocks and departed. (Dkt. 46 ¶ 19; Dkt. 47 ¶ 19).

   ii.   *Martin's Accident*

Sometime before 3:43 a.m. on March 17, 2011, Hartwig driver Paul Atkins stopped with a Hartwig trailer at the NDC, an intermediate stop on Hartwig's Chicago to Memphis route for the USPS. (Dkt. 46 ¶¶ 20–23; Dkt. 47 ¶¶ 20–23). Postal employee Anderson was working the overnight shift at the Surface Transfer Center. (Dkt. 46 ¶ 25; Dkt. 47 ¶ 25). Long-time postal employee Andrea Martin was also working the overnight shift at the Surface Transfer Center as a forklift operator. (Dkt. 46 ¶ 26; Dkt. 47 ¶ 26). Anderson testified she observed Atkins's trailer when it was opened and saw it contained two over-the-road containers (heavy wheeled metal containers holding sacks or trays of mail) at the end of the partial load, positioned side by side and secured by shoring straps. (Dkt. 46 ¶ 27; Dkt. 47 ¶ 27).

Anderson testified that, after they had removed the shoring straps, she asked Atkins to move the containers completely off the Hartwig trailer to allow Martin to load 36-inch boxes on skids freely down the middle of the trailer. (Dkt. 46 ¶ 28; Dkt. 47 ¶ 28; Dkt. 53 ¶ 32). Anderson testified that Atkins "said okay," though Atkins testified that if the postal employee had asked him to move a container or handle a strap, he would have refused. (Dkt. 46 ¶¶ 28–29; Dkt. 46 ¶¶

4

28–29). Anderson saw Atkins had additional straps in his trailer hanging from the wall but did not ask him to remove them. (Dkt. 46 ¶ 30; Dkt. 47 ¶ 30; Dkt. 53 ¶ 31).

Anderson then left the trailer to be unloaded but came back when she heard Martin scream. (Dkt. 46 ¶ 31; Dkt. 47 ¶ 31; Dkt. 53 ¶ 33). Anderson saw the two over-the-road containers had not been taken off the trailer as she asked but were still inside the trailer, with one positioned in front of the other, leaving a tight aisle for Martin to travel down with her forklift close to one side of the trailer, where the shoring straps were hanging off the wall. (Dkt. 46 ¶¶ 31–33; Dkt. 47 ¶¶ 31–33). The hook of a strap had caught under the seat of Martin's forklift, lifting it and pinning her between the seat and the cage of the forklift. (Dkt. 46 ¶ 33; Dkt. 47 ¶ 33). Anderson called it "a freak accident" that she had "never seen . . . happen before." (Dkt. 46 ¶ 35; Dkt. 47 ¶ 35).

Martin testified that if she had felt there was an unsafe condition, she could have refused to load the trailer, and Anderson testified that Martin could have asked for the hanging straps' removal from the trailer. (Dkt. 46 ¶ 34; Dkt. 47 ¶ 34). Martin left the USPS after her injury and received Federal Employees' Compensation Act benefits. (Dkt. 46 ¶¶ 38–39; Dkt. 47 ¶¶ 38–39).

### iii.    Martin's State-Court Lawsuit

Martin sued Hartwig in the Circuit Court of Cook County in 2013, alleging Hartwig failed to maintain its trailer in a safe condition so as not to endanger others and to provide a safe means of removing containers from the trailer. (Dkt. 46 ¶ 40; Dkt. 47 ¶ 46). The case went to trial in 2018. (Dkt. 46 ¶ 41; Dkt. 47 ¶ 41). Hartwig tendered its defense to Plaintiffs under its applicable general liability and excess policies. (Dkt. 50 ¶ 11). Hartwig argued in its defense that the USPS was responsible for Martin's accident because Anderson was "supposed to make sure [the truck is] safe for [Martin], as part of her job. She's supposed to look inside of that truck,

look for things such as holes in the floor, things like that, to make sure it's safe for their drivers to go in." (Dkt. 46 ¶ 42; Dkt. 47 ¶ 42). Hartwig also argued that postal employees like Anderson were responsible for removing shoring straps before loading. (Dkt. 46 ¶ 42; Dkt. 47 ¶ 42). Hartwig cross examined Anderson about her training, the hanging straps, and her decision to ask the Hartwig driver to move the containers instead of removing the straps. (Dkt. 46 ¶ 43; Dkt. 47 ¶ 43). Hartwig moved for a directed verdict, arguing that Hartwig's driver had no duty to remove any straps in the trailer that postal employees may have put there, but the court denied the motion. (Dkt. 46 ¶ 44; Dkt. 46 ¶ 44).

Hartwig argued at closing that it was Anderson's responsibility, not Hartwig's, to move the containers on the trailer, and that it was a postal worker's responsibility to remove the straps from the trailer. (Dkt. 46 ¶ 45; Dkt. 47 ¶ 45). Hartwig also emphasized Anderson's testimony to argue it was "her job to open the trailer and make sure that trailer was safe for the forklift drivers." (Dkt. 46 ¶ 46; Dkt. 47 ¶ 46). Hartwig told the jury, "[Y]ou can't hold Hartwig Trucking responsible for something that the post office did, or a postal employee. . . . If Tina [Anderson] had taken those straps off, this accident wouldn't have happened. . . . I'm asking you not to hold Hartwig Transportation or Hartwig Trucking responsible for what the post office did. . . . Whose responsibility was it to remove the straps? U.S. postal workers' employees." (Dkt. 46 ¶ 46; Dkt 47 ¶ 46).

Finally, Hartwig also argued at trial that Martin was contributorily negligent in causing her injuries. (Dkt. 50 ¶ 22). Hartwig's state-court answer and affirmative defenses repeatedly stated that Martin "[f]ailed to observe an open and obvious condition." (Dkt. 50 at 9 ¶ 1). Martin testified she was aware hanging straps could injure postal employees trying to move containers if straps got caught or hooked. (*Id.* ¶ 2).

6

The jury instructions considered both defenses. (Dkt. 46 ¶ 47; Dkt. 47 ¶ 47; Dkt. 46-3 at 253–55, 256–57). The court gave the jury three verdict forms: A—verdict for Martin; B—verdict for Martin with a reduction in damages for contributory negligence; and C—verdict for Hartwig. (Dkt. 46 ¶ 47; Dkt. 47 ¶ 47). On September 14, 2018, the jury returned verdict form A—verdict for Martin—and awarded Martin $3,820,000 in damages with no contributory negligence reduction. (Dkt. 46 ¶ 48; Dkt. 47 ¶ 48; Dkt. 46-3 at 267). As Hartwig's insurers, Plaintiffs paid $3 million of the verdict to Martin. (Dkt. 46 ¶ 49; Dkt. 47 ¶ 49). Allied paid $1 million and AMCO paid $2 million. (Dkt. 50 ¶ 13).

   iv.   *Plaintiffs' Federal Lawsuit*

On March 20, 2019, as Hartwig's subrogees Plaintiffs submitted a joint administrative claim to the USPS seeking contribution from the United States of $3 million in damages arising from Martin's lawsuit against Hartwig. (Dkt. 46 ¶ 50; Dkt. 46-3 at 269–70). The USPS did not finally adjudicate the administrative claim within six months, (Dkt. 36 at 3–4), so Plaintiffs filed this contribution claim against the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). (Dkt. 1).

During discovery, Plaintiffs stated in response to interrogatories that each of their negligence theories relied on the USPS's "duty to ensure that the trailer under its exclusive control was safe for loading and unloading." (Dkt. 46 ¶ 51; Dkt. 47 ¶ 52). Plaintiffs' interrogatory responses several times invoked the USPS's "restricted access" to trailers and its "exclusive control over the trailer during loading and unloading" as their claims' basis. (Dkt. 46 ¶¶ 52–57; Dkt. 47 ¶¶ 52–57).

Plaintiffs subsequently amended their Complaint. (Dkt. 35). They now allege "[a]t all relevant times, USPS had a duty to use reasonable care and caution in order to prevent and avoid

injuries to individuals working in the area where Andrea Martin alleged that she was injured." (Dkt. 35 ¶ 16). Plaintiffs allege this duty arose because "the USPS, through its agents, servants and employees, controlled the loading and unloading of trailers at the [NDC]." (Dkt. 35 ¶ 15). Plaintiffs allege USPS breached its duty to Martin through its employees' negligent acts or omissions, which Plaintiffs allege proximately caused Martin's injuries. (Dkt. 35 ¶¶ 17–18). The United States denies all elements of Plaintiffs' contributory negligence claim, including that it controlled the loading and unloading of trailers, or that it owed a duty to use reasonable care and caution to prevent and avoid injuries to individuals working inside Hartwig's trailer. (Dkt. 36 at 5–6).

The parties moved for partial summary judgment on certain aspects of the duty element of Plaintiffs' negligence claim and Defendant's intended defense to that element. Plaintiffs move the Court to bar Defendant's "open and obvious" defense. (Dkt. 40 at 2). Defendant moves the Court to grant summary judgment on Paragraphs 17(a)–(f), (h), and (i) of Plaintiffs' Second Amended Complaint, concerning specific duties Defendant allegedly owed to Martin. (Dkt. 45 at 1).

### B. Plaintiffs' Local Rule 56.1 Compliance

"Compliance with local rules like Rule 56.1 ensures the facts material to the issues in the case and the evidence supporting such facts are clearly organized and presented for the court's summary judgment determination." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 219 (7th Cir. 2015). The trial court may insist on strict compliance with local rules. *Id.* at 219; *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009); *FTC v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005).

> *i. Plaintiffs' Noncompliance with Local Rule 56.1 in Its Motion for Summary Judgment*

Federal Rule of Civil Procedure 56(c) requires parties to support factual assertions by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1)(A). Local Rule 56.1 further requires the moving party to file a Statement of Material Facts that complies with Local Rule 56.1(d) and attaches cited evidentiary material. LR 56.1(a)(2). Local Rule 56.1(d) requires the moving party's Statement of Material Facts to support asserted facts with citations to the specific evidentiary material, including the specific page number. LR 56.1(d)(2). The Court may disregard any asserted fact not supported by such a citation. LR 56.1(d)(2).

Plaintiffs' Local Rule 56.1(a) Statement of Material Facts, (Dkt. 42), inappropriately relies on citations to unverified pleadings rather than evidence. In support of the statements made in paragraphs 1–16, Plaintiffs cite only to the Second Amended Complaint. (*See* Dkt. 42 ¶¶ 1–16; Dkt. 35; Dkt. 42 at Pl. Ex. 1). Citations to the operative complaint do not satisfy Plaintiffs' obligation under FRCP 56 and LR 56.1 to support each factual assertion with evidence from the record. *See, e.g.*, *Mack v. City of Chicago*, No. 16 C 7807, 2019 WL 1331786, at *4 (N.D. Ill. Mar. 25, 2019) (disregarding factual statements that cited only unverified pleadings), *aff'd*, 788 F. App'x 396, 396 (7th Cir. 2019). For purposes of Plaintiffs' Motion for Summary Judgment, the Court has therefore not admitted "facts" Plaintiffs assert without proper evidentiary citation. To the extent Defendant in its response, (Dkt. 50), admits certain of Plaintiffs' statements as factual, the Court deems them undisputed for purposes of ruling on this motion.

Further, Local Rule 56.1 requires the moving party to file "a response to the [non-moving party's] LR 56.1(b)(3) statement of additional material facts (if any) that complies with 56.1(c)

and attaches any cited evidentiary material" not previously attached. LR 56.1(c)(2). Plaintiffs filed their LR 56.1(c)(1) Reply memorandum of law, (Dkt. 51), but filed no response to Defendant's 56.1(b)(3) Statement of Additional Material Facts, (Dkt. 50). The Court therefore deems as admitted the factual assertions made and properly supported by citations to evidence in Defendant's LR 56.1(b)(3) Statement of Additional Material Facts, (Dkt. 50). *See McCurry v. Kenco Logistics Services, LLC, et al.*, 942 F.3d 783, 787 (7th Cir. 2019) (holding district court properly deemed admitted facts opposing party had not properly responded to).

### ii. *Plaintiffs' Noncompliance with Local Rule 56.1 in Its Response in Opposition to Defendant's Motion for Summary Judgment*

Local Rule 51(b) requires the party opposing a motion for summary judgment to file "a response to the [moving party's] LR 56.1(a)(2) Statement of Material Facts that complies with LR 56.1(e) and that attaches any cited evidentiary material not attached to the LR 56.1(a)(2) statement . . . ." LR 51(b)(2). Local Rule 56.1(e) likewise requires the party opposing the motion for summary judgment who disputes the moving party's Statement of Material Facts to "cite specific evidentiary material that controverts the fact and . . . concisely explain how the cited material controverts the asserted fact. Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." LR 56.1(e)(3).

Plaintiffs' Response to Defendant's LR 56.1(a) Statement of Material Facts, (Dkt. 47), fails to cite to any evidentiary material in denying Defendant's factual assertions. In paragraphs 11, 13, 15–19, and 28, Plaintiffs deny Defendant's factual assertions without any citations to the record whatsoever. (*See* Dkt. 47 ¶¶11, 13, 15–19, 28). Plaintiffs did not dispute any remaining facts Defendant asserted. (*See* Dkt. 47). "The non-moving party's failure to admit or deny facts as presented in the moving party's statement or to cite to any admissible evidence to support facts presented in response by the non-moving party render the facts presented by the moving

party as undisputed." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218–19 (7th Cir. 2015). The Court therefore disregards Plaintiffs' unsupported denials, (Dkt. 47), and deems admitted the facts stated in paragraphs 11, 13, 15–19, and 28 of Defendant's LR 56.1(a) Statement of Material Facts, (Dkt. 46).

### C.  Defendant's Objection to Booker Testimony

In Defendant's response to Plaintiffs' Statement of Additional Facts, Defendant objected to Plaintiffs' paragraphs numbered 27, 30, and 35, to the extent Plaintiffs asserted facts supported by deceased USPS employee Willis Booker's testimony. (Dkt. 53). "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). When the non-moving party objects to evidence cited in the moving party's motion for summary judgment, the court considers that evidence only if the court concludes it would be admissible at trial. *Steffak v. Client Services, Inc.*, 948 F.3d 761, 769 (7th Cir. 2020). "Evidence offered at summary judgment must be admissible to the same extent as at trial, at least if the opposing party objects . . . ." *Baines v. Walgreen Co.*, 863 F.3d 656, 662 (7th Cir. 2017).

Defendant objects to Booker's testimony as inadmissible hearsay that fails to meet the hearsay exception. *See* Fed. R. Evid. 802; Fed. R. Evid. 804(b)(1). The parties agree Booker is deceased and unavailable to testify. For former testimony of an unavailable declarant to qualify for an exception to Federal Rule of Evidence 802 Rule Against Hearsay, the testimony must now be offered "against a party who had—or, in a civil case, whose predecessor in interest had—an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1)(B). Though neither party has provided the actual transcript of Booker's

deposition,[1] as the United States was not a party to Martin's lawsuit against Hartwig, it follows the Defendant has truthfully stated it was not present at the deposition. The Defendant therefore had no opportunity to develop Booker's testimony.

The Federal Rules of Evidence do not define "predecessor in interest," nor has the Seventh Circuit Court of Appeals settled on a precise definition. *See, e.g.*, *Volland-Golden v. City of Chicago*, 89 F. Supp. 3d 983, 986–89 (N.D. Ill. 2015) (discussing predecessor-in-interest term and only Seventh Circuit case directly on point, *United States v. Feldman*, 761 F.2d 380 (7th Cir. 1985)). But as a straightforward application, "'[p]redecessor in interest,' in its most literal sense, is simply one who precedes another in desiring a particular object." *Id.* at 986.

Neither Hartwig nor Martin is the United States' "predecessor in interest" here. Neither had a similar motive to develop Booker's testimony during the state-court trial. Hartwig's interest directly opposed that of the United States, as Hartwig argued at trial the USPS rather than Hartwig was liable for Martin's injury. (Dkt. 46 ¶ 46; Dkt 47 ¶ 46). Martin's interest in developing Booker's testimony was to implicate Hartwig's liability for her injury—her only route for recovery, (*see* Dkt. 46-3 at 253)—and to deny any contributory negligence that might reduce her recovery, (*see* Dkt. 46-3 at 254–55). Neither party had sufficient interest or motivation to develop Booker's testimony to substitute for that of the United States.

The Court therefore concludes Booker's deposition testimony would not qualify for the Federal Rule of Evidence 804(b)(1) Former Testimony exception to Federal Rule of Evidence 802 Rule Against Hearsay. The Court agrees with Defendant that this testimony is hearsay and inadmissible for the truth of the matters it asserts. Per FRCP 56(c)(2), the Court thus sustains Defendant's objection to Booker's testimony and disregards Plaintiffs' Statement of Additional

---

[1] Plaintiffs mistakenly note Booker's deposition was attached as Exhibit 4, but this was a different document. (*See* Dkt. 42 at 25–30, denoted as Plaintiffs' Exhibit 4).

Facts, paragraphs numbered 27, 30, and 35, (Dkt. 47 at 4–6; Dkt. 53), to the extent Plaintiffs assert facts supported only by deceased USPS employee Willis Booker's deposition testimony.

<u>LEGAL STANDARD</u>

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Reed v. Columbia St. Mary's Hosp.*, 915 F.3d 473, 485 (7th Cir. 2019). Summary judgment "requires a non-moving party to respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (citation omitted). The parties genuinely dispute a material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

<u>DISCUSSION</u>

**A. Federal Tort Claims Act and Contribution**

Plaintiffs' action arises under the Federal Tort Claims Act ("FTCA"), which expressly waives the United States' sovereign immunity for tort liability. 28 U.S.C. § 2674; *Brownback v. King*, 141 S. Ct. 740, 745–46 (2021). The United States can be held liable in tort "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. The FTCA incorporates the law of the state where the tortious act occurred—here, Illinois. 28 U.S.C. § 1346(b). Plaintiffs bring a contribution claim against the United States under Illinois's Joint Tortfeasor Contribution Act. 740 ILCS 100/2(a)–(b) (granting a right of contribution where two or more persons are subject to liability in tort arising out of the same personal injury and where a tortfeasor has paid more than his total pro rata share of liability).

Martin's Cook County trial did not establish the United States was blameless for her injury, only that Hartwig was at least partially responsible. (*See* Dkt. 46-3 at 253 (reading jury instructions: "If you decide that the defendant [Hartwig] was negligent and that its negligence was a proximate cause of the injury to the plaintiff [Martin], it is not a defense that some third person who is not a party to the suit may also have been to blame.")). To prevail on its contribution claim under relevant Illinois law, therefore, Plaintiffs must prove the United States' own negligence contributed to Martin's injury, and that it has not paid its pro rata share of liability. *See Doyle v. Rhodes*, 461 N.E.2d 382, 388 (Ill. 1984) (holding defendant who loses negligence action may bring subsequent contribution claim against employer immunized from original lawsuit and must prove employer also culpable for a share of the loss).

Under Illinois law, a plaintiff alleging negligence must prove: (1) the defendant owed plaintiff a duty, (2) the defendant breached that duty, and (3) the defendant's breach proximately caused plaintiff's injuries. *Roh v. Starbucks Corp.*, 881 F.3d 969, 973 (7th Cir. 2018) (citing *Mt. Zion State Bank & Trust v. Consol. Commc'ns, Inc.*, 660 N.E.2d 863, 868 (Ill. 1995)). Both parties' Motions for Partial Summary Judgment before the Court, (Dkt. 41, 44), concern the duty element.

### B. Duty Generally

The existence of a duty is a question of law. *Roh*, 881 F.3d at 973 (citing *Ward v. K Mart Corp.*, 554 N.E.2d 223, 226 (Ill. 1990)). "The touchstone of [the] court's duty analysis is to ask whether [the injured person] and a defendant stood in such a relationship to one another that the law imposed upon the defendant an obligation of reasonable conduct for the benefit of the [injured person]." *Marshall v. Burger King Corp.*, 856 N.E.2d 1048, 1057 (Ill. 2006).

"As a matter of practical application, . . . the concept of duty in negligence cases is very involved, complex and indeed nebulous." *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 1994) (internal citations omitted). Illinois law requires the Court to weigh four factors in its analysis of this relationship: "(1) the reasonable foreseeability of the injury, (2) the likelihood of the injury, (3) the magnitude of the burden of guarding against the injury, and (4) the consequences of placing that burden on the defendant." *Bruns v. City of Centralia*, 21 N.E.3d 684, 689 (Ill. 2014)); *see also Dunn*, 880 F.3d at 906 (listing same factors).

### C. Defendant's Motion for Summary Judgment

The United States moves for partial summary judgment on Plaintiffs' allegations that the USPS had a duty of reasonable care and caution to prevent and avoid injuries to individuals working in Hartwig's trailer, and that it breached that duty when USPS employees allegedly acted or failed to act in several ways. (Dkt. 35 ¶ 17(a)–(f), (h), (i); Dkt. 45 at 1).

The United States argues Plaintiffs inappropriately allege duties sounding in premises liability, grounded on Plaintiffs' view the USPS assumed "exclusive control" over the trailers during loading and unloading. (Dkt. 45 at 8). True, premises liability is inapplicable here, where Hartwig's trailer is personal property rather than land. Plaintiffs concede as much. (Dkt. 48 at 2–3). And ample evidence shows the USPS did not exclusively control Hartwig trailers during the loading and unloading process. (*See* Dkt. 46 ¶¶ 11–17). Plaintiffs seem to have abandoned this view, in any case. Their answers in discovery notwithstanding, the Second Amended Complaint does not allege USPS exerted "exclusive control" over the trailers during mail loading and unloading. (*See generally* Dkt. 35). But the United States' disclaimer of any duty of reasonable care for workers' safety inside Hartwig's trailers, solely because the USPS had partial control over that space, is too narrow an understanding of duty. Rather, the facts suggest some degree of

15

joint control, at least during the loading and unloading process. The extent of the USPS's control over this work factors into the analysis of whether the USPS owed Martin a duty under these circumstances.

The USPS as an employer is held to the same standard of care as all employers under Illinois law. *See* 28 U.S.C. § 2674 ("The United States shall be liable . . . in the same manner and to the same extent as a private individual under like circumstances, . . . ."). Employers in Illinois do not guarantee employees' safety, but they must use reasonable care to provide for employees' safety. *Coselman v. Schleifer*, 239 N.E.2d 687, 689 (Ill. App. Ct. 1968); *Taake v. WHGK, Inc.*, 592 N.E.2d 1159, 1173 (Ill. App. Ct. 1992). Employees do not assume the risk of their employers' negligence unless they know of and understand that risk. *Coselman*, 239 N.E.2d at 689. The employer also has the nondelegable duty to provide a reasonably safe place to work. *Id.*; *Pempek v. Silliker Laboratories, Inc.*, 723 N.E.2d 803, 811 (Ill. App. Ct. 1999); *Taake*, at 592 N.E.2d at 1173.

### i.    Paragraph 17(a): Failure to Inspect

Defendant had no duty "to make a reasonable inspection of the trailer and the work being done thereon, when USPS knew, or in the exercise of ordinary care should have known that said inspection was necessary to prevent injury to Andrea Martin." (Dkt. 35 ¶ 17(a)). A duty for the USPS to inspect Hartwig's trailer for all potentially dangerous conditions is both too specific and too broad to impose on the United States. An "inspection" means "careful scrutiny or survey" or "close or critical examination."[2] A duty to inspect would require postal employees to examine Hartwig's trailers closely and carefully before even beginning the loading process. There are over 50 loading docks at the NDC's Surface Transit Center, with trailers constantly coming and

---

[2] *Inspection*, Oxford English Dictionary, https://www.oed.com/view/Entry/96956?redirectedFrom=Inspection#eid, (last visited Sept. 7, 2022).

going on tight schedules. (Dkt. 46 ¶¶ 6–7). Inspecting each trailer, multiplied across all trailers coming into this single USPS distribution center—let alone all USPS distribution centers nationwide—would waste valuable time and resources, reducing efficiency. This would pose too great a burden for the USPS, particularly when Hartwig is contractually responsible for maintaining its trailers' safety. (Dkt. 46 ¶ 3).

Furthermore, it is unclear what the USPS should look for in such an inspection. "Any danger" would certainly be too broad, when employers have no duty to guarantee employees' safety at all times. *Taake*, 592 N.E.2d at 1173. Moreover, Plaintiffs cannot show how such an inspection would have prevented this injury, even if USPS had a duty to look out for dangerous conditions. Anderson testified that when she opened the trailer, there were two over-the-rails containers positioned side-by-side, blocking access. (Dkt. 46 ¶ 27). The trailer's initial condition did not pose a safety risk. The injury occurred after the containers were rearranged, with one in front of the other, leaving a narrow passage with little room for a forklift to maneuver. (Dkt. 46 ¶ 31).

Defendant had no duty to inspect Hartwig's trailer for dangerous conditions.

### ii.    *Paragraph 17(b): Improper Control*

Plaintiffs allege Defendant "improperly controlled the [Hartwig] trailer so that as a direct and proximate result thereof Andrea Martin was injured . . . ." (Dkt. 35 ¶ 17(b)). The USPS may have a duty to exercise ordinary care while controlling the space inside trailers during mail loading and unloading, and on these facts, a jury might reasonably find the USPS breached that duty by negligently creating an unsafe condition inside. *See Coselman*, 239 N.E.2d at 689 (requiring employers to use reasonable care for employees' safety); *see also Dickey v. Commonwealth Edison Co.*, 500 N.E.2d 697, 698 (Ill. App. Ct. 1986) (finding it would not

17

unduly extend employer's duty to provide safe place to work to require employer to exercise ordinary care in maintaining customary passageways used by employees when transiting between workspaces).

That the USPS exercised some, though not exclusive, control over the Hartwig trailers during loading and unloading of mail indicates the USPS could have reasonably foreseen an injury happening inside by arranging containers in a way that limited a forklift's ability to maneuver inside. While Anderson testified nothing like Martin's accident had ever happened before, (Dkt. 46 ¶ 35; Dkt. 47 ¶ 35), Martin, at least, knew straps posed a potential danger if they got hooked on equipment. (Dkt. 50 at 9 ¶ 2). Although shoring straps hanging from the trailer's wall are not dangerous in and of themselves, Defendant admits they may be dangerous "when other conditions are present, such as a container configuration" like the one Martin encountered. (Dkt. 45 at 10). Postal employees knew an accident would be more likely without enough space for forklifts to maneuver in the trailer, as Anderson thought the two over-the-road containers needed to be removed completely before loading more mail. (Dkt. 46 ¶ 28). The container configuration here in combination with the hanging straps created a higher likelihood for a foreseeable accident if USPS controlled these circumstances.

The greater USPS's control over loading and unloading, the lesser the magnitude of the burden of imposing a duty on the USPS to do so with reasonable care. Plaintiffs cannot show USPS exerted "exclusive control" over loading and unloading the trailers. (Dkt. 46 ¶¶ 10–17). But reasonable inferences in Plaintiffs' favor could show the USPS retained substantial control over that process. For example, when the trailer is first opened, postal employees assessed the inside to determine where and how to load more mail. (Dkt. 46 ¶ 11). If mail containers needed rearranging before loading more mail, postal employees either did so themselves, or they decided

how best to do so. (Dkt. 46 ¶ 13; Dkt. 53 ¶ 28). While preparing the trailer for more mail, postal employees removed shoring straps, either on their own or as part of a combined effort with drivers. (Dkt. 46 ¶ 13; Dkt. 53 ¶ 28).

In this case, we do not know who moved the containers to be arranged one in front of the other, leaving a narrow aisle close to one side of the trailer wall. (*See* Dkt. 46 ¶ 31). Neither do we know who hung the straps, though Anderson saw them hanging and did not ask them to be removed. (Dkt. 53 ¶ 31). The parties dispute the extent to which the USPS controlled the trailer during mail loading. (*Compare* Dkt. 46 ¶¶ 11–13 *with* Dkt. 53 ¶ 28). USPS's control over this process is relevant to whether the USPS had a duty to exercise reasonable care for employees working inside the space. (Dkt. 35 ¶ 16). If the USPS negligently created a dangerous condition for Martin inside the trailer while controlling the mail-loading process, a jury may reasonably find for Plaintiffs. Because the parties dispute the material facts underlying the USPS's control in general and in this case specifically, Plaintiffs survive summary judgment on that allegation.

### iii. *Paragraph 17(c): Failure to Provide Workplace Free of Any Dangerous Conditions*

Defendants had no duty to provide Martin with "a safe place within which to work where said trailer would be free of any dangerous conditions; . . . ." (Dkt. 35 ¶ 17(c)). Again, employers have no common-law duty to guarantee a danger-free workplace, as this would be too burdensome to carry out. *Taake*, 592 N.E.2d at 1174 (finding burden of requiring employer "to guard against any risk" of insufficient clearance for employee to remove air purifiers would have been overwhelming); *Coselman*, 239 N.E.2d at 689 ("An employee assumes all of the usual and customary risks of his or her employment."). Plaintiffs overstate any duty the USPS may have had over the conditions of Martin's workspace.

### iv. *Paragraph 17(d): Failure to Provide Safe Means of Removal*

Plaintiffs' allegation that the USPS "[f]ailed to provide Andrea Martin with a safe means of removal and/or loading of trailers when USPS knew, or in the exercise of ordinary care should have known, that hanging straps would create a dangerous condition to which Andrea Martin was exposed;" (Dkt. 35 ¶ 17(d)), duplicates and overstates the more general duty alleged in Paragraph 17(b). To the extent the USPS may have created a foreseeably dangerous condition through its control of the loading and unloading process, the container configuration, and the hanging straps, Plaintiffs' allegation survives, as discussed above. But it is too specific to impose a duty "to provide . . . a safe means of removal and/or loading of trailers" because of the hanging straps' mere presence on the trailer's sides. The hanging straps on their own did not pose a reasonably foreseeable danger. Plaintiffs show no evidence forklifts get caught on straps without other conditions present. With forklifts and other equipment constantly entering and exiting trailers, it would be too burdensome to require a general USPS practice of taking down or securing all hanging straps just to guarantee "a safe means of removal and/or loading or unloading," without more.

### v.    Paragraphs 17(e)–(f): Failure to Secure Straps and Hooks

As in Paragraph (d), discussed above, Defendant had no overarching duty to secure straps or hooks as alleged in Paragraphs (e) and (f). (*See* Dkt. 35 ¶¶ 17(e), (f)). Again, there is no evidence that hanging, unsecured shoring straps or hooks on their own posed a danger. Trailers have many hanging straps and hooks, as contracts require. (Dkt. 46 ¶ 5). Requiring the USPS to secure all shoring straps and hooks in trailers transporting mail at all times would be unduly burdensome, especially when multiplied across all trailers and all USPS distribution centers. Defendant's motion for summary judgment on Paragraphs 17(e) and (f) is granted.

### vi.    Paragraphs 17(h)–(i): Negligently Allowing or Causing Straps to be Hung

Plaintiffs allege Defendant "[n]egligently allowed straps to be hung from the interior of the trailer;" and "[n]egligently caused straps to be hung from the interior of the trailer . . . ." These allegations can only mean Hartwig hung the straps, with Defendant allowing or causing this action to proceed negligently. Paragraph 17(g) separately alleges postal employees themselves negligently hung straps, and Defendant is not moving for summary judgment on that claim.

Employers are not liable for harms caused by an independent contractor. *Carney v. Union Pac. R.R. Co.*, 77 N.E.3d 1, 7 (Ill. 2016). This accords with the duty analysis of the parties' relationship—when an independent contractor controls the details and methods of his work, the law imposes no duty on the employer to guard against injuries to workers where the employer exerts no control. *See Carney*, 77 N.E.3d at 7; *Frieden v. Bott*, 146 N.E.3d 763, 768 (Ill. App. Ct. 2020).

Illinois law also recognizes an exception to this principle articulated in the Restatement (Second) of Torts § 414 (1965). To the extent the employer retains control over the independent contractor's work, the employer can be held directly liable for his own negligent exercise of that control. *Carney*, 77 N.E.3d at 8 (citing Restatement (Second) of Torts § 414 (1965)). For Section 414 to apply,

> the employer must have retained at least some degree of control over the manner in which the work is done. It is not enough that he has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations and deviations. Such a general right is usually reserved to employers, but it does not mean that the contractor is controlled as to his methods of work, or as to operative detail. There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Carney*, 77 N.E.3d at 11 (quoting Restatement (Second) of Torts § 414, cmt. c, at 388 (1965)).

21

Here, there is some evidence postal employees asked Hartwig drivers to help rearrange containers and remove shoring straps. (*See* Dkt. 46 ¶¶ 11–14; *id.* ¶¶ 27–30). But there is no showing that postal employees retained a right of supervision over Hartwig drivers, such that the drivers were not free to do their work in their own way. The contracts require Hartwig to maintain the trailers, with no indication the USPS had a right to control how they did so. (Dkt. 46 ¶ 3). Hartwig driver Atkins suggested he "would have refused" USPS's direction or request he disagreed with. (Dkt. 46 ¶ 29). Thus, USPS has no direct liability for any actions Hartwig drivers may have taken, because USPS retained no right to control or supervise Hartwig as an independent contractor. *See Carney*, 77 N.E.3 at 13 (holding Section 414 of the Restatement (Second) inapplicable where defendant employer's suggestions to independent contractor on workplace safety did not implicate employer retained right to control safety).

Defendant, therefore, cannot be held liable for negligently allowing or causing Hartwig drivers to hang shoring straps from trailers' wall. Defendants retained no right of supervision over Hartwig drivers, so they cannot be held liable for negligently exercising control they lacked over Hartwig.

In summary, Defendant's Partial Motion for Summary Judgment is denied as to Paragraph 17(b) of the Second Amended Complaint, and granted as to Paragraphs 17(a), (c), (d), (e), (f), (h), and (i).

### D. Plaintiffs' Motion for Summary Judgment

Plaintiffs move the Court to bar the United States from asserting an "open and obvious" defense, either because (1) it applies only to premises liability, or (2) because the United States has already benefited from the jury's award against Hartwig. (Dkt. 40 at 2). Neither argument is persuasive.

Illinois law does not require defendants to "foresee and protect against injuries" from all potentially hazardous "open and obvious" conditions. *Dunn*, 880 F.3d at 906 (citing *Bucheleres v. Chi. Park Dist.*, 665 N.E.2d 826, 832 (Ill. 1996)). Where an "open and obvious" condition exists, individuals must take reasonable care "to avoid any danger inherent in [the] condition." *Id.* (quoting *Bucheleres*, 665 N.E.2d at 832)). "Application of the open and obvious rule affects the first two factors of the duty analysis: the foreseeability of injury, and the likelihood of injury. Where the condition is open and obvious, the foreseeability of harm and the likelihood of injury will be slight, thus weighing against the imposition of a duty." *Bruns v. City of Centralia*, 21 N.E.3d 684, 690 (Ill. 2014). In other words, the law expects ordinary people to take some care for their own safety.

Though most often invoked as a factor in the duty analysis for premises-liability negligence claims, Illinois law does not restrict the open-and-obvious doctrine to this context. *Kun Mook Lee v. Young Rok Lee*, 149 N.E.3d 551, 558 (Ill. App. Ct. 2019) ("[A] defendant can raise an open-and-obvious defense to either an ordinary-negligence case or a premises-liability case."). The United States intends to argue that the hanging straps presented an open-and-obvious condition to Martin. "Obvious" means that "both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment." *Bruns*, 21 N.E.3d at 690 (quoting Restatement (Second) of Torts § 343A, at 218 (1965)). Deciding "whether [a] condition is open and obvious depends not on [a] plaintiff's subjective knowledge but rather, on the objective knowledge of a reasonable person confronted with the same condition." *Dunn*, 880 F.3d at 907 (quoting *Racky v. Belfor USA Grp., Inc.*, 83 N.E.3d 440, 467 (Ill. App. Ct. 2017)). Typically, "[w]hether a dangerous condition is open and obvious" is a question of fact, but when "no dispute exists as to

the physical nature of the condition," it becomes a question of law. *Dunn*, 880 F.3d at 906 (quoting *Bruns*, 21 N.E.3d at 690).

According to the United States, Martin knew or reasonably should have known under the circumstances that the hanging straps presented a danger. (Dkt. 49 at 8). The United States thus had no duty to protect Martin against that obvious danger—she would have avoided it, so injury was neither reasonably likely nor foreseeable. Whether the United States succeeds in this argument remains to be seen. Hartwig had no luck arguing a similar, related concept—that Martin knew or should have known of the danger the strap presented to her, so she was contributorily negligent to proceed down the narrow aisle with her forklift. (*See* Dkt. 50 ¶ 22; Dkt. 50 at 9 ¶¶ 1–2). But the United States can still argue the open-and-obvious doctrine precludes the existence of a duty in the context of an ordinary-negligence claim. If the United States owed no duty, it cannot be held liable as a joint tortfeasor. *See* 740 ILCS 100/2(b).

Furthermore, equitable estoppel does not apply here. It is not unjust for the United States to defend itself against a negligence claim—with that defense incorporating an argument that it owed no duty to Martin under the open-and-obvious doctrine—simply because Hartwig made a similar, losing argument alleging Martin's contributory negligence, causing Plaintiffs to pay out Martin's successful claim against Hartwig. As discussed above, the open-and-obvious doctrine is a component of the duty analysis, and the United States intends to argue it owed no duty, so therefore, committed no negligence. That the jury ruled for Martin, with no contributory negligence reduction, (Dkt. 46 ¶ 48), sheds no light on the factual issue of whether the shoring strap was open and obvious under the circumstances. The jury made no specific finding on that issue; the verdict card gives no rationale for why the jury rejected Hartwig's contributory negligence defense. (*See* Dkt. 46 ¶¶ 47–48). The jury instructions likewise provided no specific

24

instruction that the jury decide the hanging straps were not "open and obvious," if they ruled for Martin with no contributory negligence. (*See* Dkt. 46-3 at 254–57). Without a clear factual finding from the jury on this issue, Defendant can raise the open-and-obvious doctrine as part of their argument why the United States owed Martin no duty.

Nor does the jury's general verdict against Hartwig automatically establish the United States' liability in tort for any part of Martin's injuries. In fact, the jury instructions expressly precluded finding a third party less than 100% at fault for Martin's injury. (Dkt. 46-3 at 253). Rather, for Plaintiffs to prevail on a contribution claim under the Illinois Joint Tortfeasor Contribution Act, Plaintiffs must first prove the United States liable in negligence for some part—between 1% and 99%—of Martin's injury. *See Equistar Chemicals, L.P. v. BMW Constructors, Inc.*, 817 N.E.2d 534, 540 (Ill. App. Ct. 2004) (noting no right of contribution existed between third-party plaintiff and defendant employer unless employer first found liable for employee's injury); *see also Doyle*, 461 N.E.2d at 390 ("An action for contribution shifts only part of the loss depending on the comparative responsibility of the parties [for the injury] . . . ."). Until Plaintiffs prove the United States' joint liability for Martin's injury, they cannot maintain the United States has failed to pay its pro rata share of liability under the Contribution Act. *See* 740 ILCS 100/2(a),(b). As yet, there is no showing of unjust enrichment, so no equitable estoppel applies.

The Court thus denies Plaintiff's Partial Motion for Summary Judgment.

<u>CONCLUSION</u>

The United States owed no specific duty to "make a reasonable inspection of [Hartwig's] trailer," provide a workspace "free of any dangerous condition," provide "a safe means of removal and/or loading of trailers" in the presence of hanging shoring straps, secure all hanging

straps or hooks, or prevent Hartwig drivers from negligently hanging straps. (Dkt. 35 ¶¶ 17(a), (c)–(f), (h), (i)). With some material facts disputed, however, a jury might reasonably find the USPS negligently controlled the mail loading and unloading process, creating an unsafe working condition for Martin inside Hartwig's trailer. (Dkt. 35 ¶ 17(b)). The Court thus grants in part and denies in part the United States' Motion for Partial Summary Judgment. [44]

Additionally, the United States is not barred from making an "open and obvious" defense as part of the duty element on the underlying negligence claim. The Court thus denies Plaintiffs' Motion for Partial Summary Judgment. [41]

Virginia M. Kendall
United States District Judge

Date: September 13, 2022